UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------X
CHRISTINE N. KNIGHT,

              Plaintiff,

-against-

MTA NEW YORK CITY TRANSIT AUTHORITY,

              Defendant.
---------------------------------------------------------X

**REPORT AND RECOMMENDATION**
**19 CV 1428 (PKC)(LB)**

**BLOOM, United States Magistrate Judge:**

Plaintiff, Christine N. Knight, brings this Employment Discrimination action against defendant MTA New York City Transit Authority ("NYCTA"). Second Am. Compl. ("SAC") ¶ 1, ECF No. 41.[1] Plaintiff alleges that defendant violated Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C § 2000e, and 42 U.S.C. § 1981,[2] as well as New York State Human Rights Law, N.Y. EXEC. LAW § 296, and New York City Human Rights Law, NYC Administrative Code § 8-107(1)(a)(2), (1)(a)(3) and § 8-107(6), by discriminating against her and subjecting her to a hostile work environment based on her race and gender. SAC ¶ 1, 69, 72.

Plaintiff now seeks leave to file a Third Amended Complaint ("TAC") to add claims of constructive discharge under Title VII, and failure to provide reasonable accommodations in violation of New York State and New York City Human Rights Law. ECF No. 60-2 ¶ 176-186. ("Proposed Third Am. Compl."). The Honorable Pamela K. Chen referred this matter to me for a Report and Recommendation in accordance with 28 U.S.C. § 636(b). For the reasons set forth

---

[1] Plaintiff also brought a FLSA case against defendant in the Southern District of New York, 19-cv-09960 (VSB)(GWG). ECF No. 44 at 1.
[2] Although the SAC and proposed Third Amended Complaint ("TAC") state that plaintiff brings claims under 42 U.S.C. § 1981, neither pleading alleges a claim under 42 U.S.C. § 1981.

below, it is respectfully recommended that plaintiff's motion to amend should be granted in part and denied in part.

## BACKGROUND[3]

Plaintiff worked for defendant for over 35 years, beginning in 1985. SAC ¶ 6. Plaintiff has worked at the Coney Island Overhaul Shop Complex ("CIO Shop") in the Production, Planning, and Scheduling section since 1988. Id. ¶ 7. While working for defendant, plaintiff held the positions of Technical Support Aide II, Transit Management Analyst I and II, and Associate Transit Management Analyst. Id. ¶ 8. After receiving a promotion to Associate Transit Management Analyst in 1999, plaintiff alleges that she was never again given the opportunity to interview for promotions or otherwise advance her career with defendant, despite obtaining her bachelor's degree, participating in professional development courses, and being pre-qualified by the NYCTA Business Service Center as meeting preliminary requirements for several management positions. Id. ¶¶ 9, 10, 13.

In 2014, plaintiff applied for a managerial position within her current department and was pre-qualified as meeting all preliminary requirements for the promotion by the NYCTA Business Service Center. SAC ¶ 15-16. Plaintiff was denied the opportunity to interview for the position, and it was ultimately given to a white male who plaintiff alleges had "fewer qualifications and less experience for that managerial position." Id. ¶ 17-18. In 2015, plaintiff requested a promotion to an available Senior Quality Control Specialist position, and managers agreed to promote her. Id. ¶ 22. However, plaintiff was later advised she did not meet the educational requirements for the position because she did not hold an engineering degree. Id. ¶ 24. In 2017, plaintiff applied for a directorial position in her current department. Id. ¶ 26. Plaintiff was pre-

---

[3] The facts are taken from plaintiff's second and proposed third amended complaints.

qualified by the NYCTA Business Service Center as meeting all the preliminary requirements for that position but was again denied an opportunity to interview. Id. ¶ 27. A white male was ultimately promoted to the position, who plaintiff alleges had less experience than plaintiff. Id. ¶ 28. In 2018, plaintiff requested a promotion that was commensurate with her skills and experience. Id. ¶ 45. Plaintiff was not promoted and alleges that defendant stripped plaintiff of some job responsibilities and transferred those responsibilities to a white male with less experience. Id. ¶ 46.

Plaintiff alleges that defendant treated her worse than other employees in comparable positions, and that the Human Resources Department at the NYCTA has a practice of promoting male, non-African American employees with similar or inferior qualifications and experience than plaintiff.[4] Id. ¶¶ 1, 29. Additionally, plaintiff alleges that she was compensated at the lower end of the pay range for every position she held at NYCTA, and asserts that defendant assigns salaries at the "lowest end of the pay scale to African American women," and assigns male, non-African American employees higher salaries in the available pay scale. Id. ¶¶ 31-32.

In addition to claims that defendant prevented her from advancing in her career due to her race and gender, plaintiff claims that she was subjected to a hostile work environment when supervisors ignored her claims of discrimination, refused to engage with her at work, denied her the resources she needed to perform her job, and failed to timely approve payment of her overtime hours. Id. ¶¶ 33-51.

Plaintiff alleges that she repeatedly complained to defendant regarding these issues, both orally and in written complaints to the MTA Office of Equal Employment Opportunity. Id. ¶¶ 58, 60. Plaintiff filed two charges with the EEOC – the first on March 24, 2014, and the second

---

[4] Plaintiff's Second Amended Complaint names seven employees who she alleges defendant promoted despite having less experience than her. SAC ¶ 30a-g.

on May 30, 2018 – and she received right to sue letters for both charges. Id. ¶ 59.[5] Plaintiff alleges that her health suffered as a result of defendant's failure to respond to her complaints, and that she experienced "extreme emotional pain and suffering, sleeplessness, and anxiety," as well as "chronic migraine headaches and chest pain," for which she sought medical treatment. SAC ¶ 61.

Plaintiff alleges that defendant retaliated against her after she filed charges with the EEOC and the instant federal lawsuit. TAC ¶¶ 53-56. In October 2019, plaintiff followed proper procedures to call out sick but was labeled as "AWOL" and docked pay. Id. ¶ 53. In December 2019, plaintiff accepted an overtime assignment, but her supervisor initially refused to process her overtime pay. Id. ¶ 54. Further, plaintiff alleges that her supervisors "put her health and safety at risk" during the first few months of the COVID-19 pandemic by failing to provide her the necessary equipment to successfully work remotely. Id. ¶¶ 56-59. Although plaintiff alleges that her age and race placed her at high risk for contracting COVID-19, she was required to physically come to work even though other employees were permitted to work from home. Id. ¶ 57. Plaintiff was not provided with a laptop, which would enable her to work remotely, until April 22, 2020 after raising the issue with her counsel. Id. ¶ 66. Plaintiff alleges that the laptop lacked the proper software, further frustrating her ability to work remotely. Id. ¶¶ 67-70.

In August 2020, defendant altered its remote work policy, requiring employees to return to in-person work for a portion of the week. Id. ¶¶ 71-72. Plaintiff was apprehensive about returning to work but complied with defendant's policy and returned to in-person work several days a week. Id. ¶¶ 73-74. While at work, plaintiff observed that COVID-19 safety protocols were frequently not followed nor enforced. Id. ¶ 75. As a result, in September 2020, plaintiff

---

[5] Only the right to sue letter for the second charge was attached to plaintiff's original complaint. ECF No. 1, at 13.

again requested permission to work remotely but defendant never responded to her request. Id.
¶¶ 79-83. When plaintiff returned to work after having surgery in the fall of 2020, defendant
permitted employees to gather without masks. Id. ¶ 87. Although she raised her concerns with
MTA leadership, her concerns were never addressed. Id. ¶¶ 88-89. Plaintiff's request to work
from home was ignored and defendant continued to permit employees to gather at work without
following COVID-19 protocols, further placing plaintiff's health at risk. Id. ¶¶ 90-93. Plaintiff
alleges that her doctor told her to "stay away" from work for her own protection. Id. ¶ 94.

Plaintiff alleges that defendant continued to subject her to retaliation after she returned to
in-person work. She alleges a supervisor asked her "are you sorry for filing a federal case?" Id. ¶
95. That same supervisor refused to sign off on plaintiff's sick time leave and assigned her to a
new task that was already assigned to another employee. Id. ¶¶ 98-102. Plaintiff requested
assistance for this new assignment, but her requests were rebuffed by her supervisors. Id. ¶¶ 103-
09. In October 2020, plaintiff's supervisor revoked her permission to telecommute, effectively
requiring her to work full-time in person. Id. ¶¶ 114-15. Plaintiff submitted a teleworking plan to
her supervisor for approval and worked remotely for several days in December 2020 in
accordance with the plan. Id. ¶¶ 117-18. While she was working remotely, plaintiff's supervisor
informed her via email that she was not approved to telecommute. Id. ¶ 119. Defendant's counsel
in the instant matter was copied on this email. Id. ¶ 120.

Plaintiff alleges that defendant continued to retaliate against her, including by filing
disciplinary charges against her and by instituting a proceeding before the Office of
Administrative Trials and Hearings ("OATH"). Id. ¶ 122. Defendant charged plaintiff with
misconduct and sought to terminate her. Id. ¶¶ 123-24. Plaintiff's supervisor also initially
approved a telework plan and then told plaintiff that she was required to be physically present at

work after her telework period had already begun. Id. ¶¶ 126-129. Plaintiff alleges she was the only analyst not permitted to telework; she was the only analyst that defendant required to work in person. Id. ¶ 137. She further alleges that her treatment by supervisors "caused her to become so ill that she was unable to continue working." Id. ¶ 140. Although plaintiff notified her supervisors that she was sick and unable to work, her supervisors told her that she would have to contact Labor Relations and explain her "AWOLs." Id. ¶¶ 142.

On January 19, 2021, while plaintiff was still out on sick leave, defendant issued amended OATH charges against her, alleging that she engaged in misconduct and fraud. Id. ¶¶ 149. Defendant claimed that plaintiff did not complete work on days specified in her telework plan, that she failed to report for in person work, and that she failed to contact Labor Relations as previously instructed. Id. ¶¶ 149-51.  Plaintiff alleges that these new charges, combined with defendant's continued retaliation and harassment "made working for Defendant NYCT intolerable." Id. ¶¶ 153.

Plaintiff attempted to return to work in late January 2021, however, when she did she was told to report to Labor Relations to explain her "AWOLs" and found that defendant had changed the lock on her office door. Id. ¶¶ 154-56. She alleges that defendant's unjust discipline, combined with defendant's failure to adequately enforce COVID-19 safety protocols "created an intolerable work atmosphere" and caused her to suffer "extreme emotional pain…sleeplessness, and anxiety." Id. ¶¶ 158-59. As a result of the ongoing harassment and the risks of working during the COVID-19 pandemic without reasonable accommodations to protect her health and safety, plaintiff alleges she was "forced to retire." Id. ¶ 161. She alleges that even after retiring effective February 1, 2021, defendant has continued to retaliate against her by withholding her pay. Id. ¶ 162.

## PROCEDURAL HISTORY

Plaintiff originally commenced this action by filing a *pro se* complaint on March 12, 2019 against defendant NYCTA and eight NYCTA employees. Compl., ECF No. 1. Defendants moved to dismiss the action and, after a Court conference, plaintiff agreed to withdraw her age discrimination claim as well as her claims against all defendants except the NYCTA. ECF Nos. 5, 7, 14, 16. The Court granted plaintiff leave to file an amended complaint. ECF No. 16.

Plaintiff, still proceeding *pro se*, filed her First Amended Complaint against defendant NYCTA on August 12, 2019, and defendant answered on August 30, 2019. ECF Nos. 17, 19. I held an early settlement conference, but the parties were unable to resolve the matter. ECF No. 29.[6]

Plaintiff subsequently retained counsel and filed a Second Amended Complaint on April 30, 2020. SAC, ECF No. 41. Plaintiff and defendant filed a Rule 26(f) Meeting Report on May 6, 2020. Since plaintiff had just filed the SAC with counsel, the parties' Rule 26(f) plan stated 'Not Applicable' for the deadline to join new parties or amend the pleadings. ECF No. 43-1. At a conference on May 11, 2020, the Court approved the plan and the parties were ordered to complete all discovery by January 15, 2021.

Plaintiff has since moved four times to extend the discovery deadline and all four requests have been granted.[7] On May 18, 2021, I held a conference to address plaintiff's fourth request for an extension, at which time plaintiff informed the Court that she had retired and

---

[6] The Court requested and obtained pro bono counsel for plaintiff for the purpose of the settlement conference.

[7] On January 8, 2021, plaintiff requested an extension to complete discovery, which this Court granted; the parties were ordered to complete discovery by February 26, 2021. ECF No. 53. This Court notified the parties that it would not look favorably on another request to extend the discovery deadline. On February 16, 2021, the Court granted plaintiff's second motion for an extension, extending the deadline to complete discovery to March 26, 2021. Plaintiff's third request was granted extending the deadline to May 7, 2021. ECF No. 56. On May 7, 2021, plaintiff moved again to extend discovery. ECF No. 57. The Court granted the request solely to permit plaintiff to conduct the outstanding Rule 30(b)(6) depositions of defendant. See Electronic Order dated May 18, 2021.

suggested that she had been "constructively discharged" by defendant. I granted the extension solely for plaintiff to conduct the outstanding Rule 30(b)(6) depositions and ordered the parties to file a status letter by June 3, 2021.[8] Following the conference, my Order stated: "Other than that deposition, discovery is complete." Electronic Order dated May 18, 2021.

On July 6, 2021, plaintiff moved to amend her complaint, attaching the Proposed Third Amended Complaint.[9] ECF No. 60. In her Proposed Third Amended Complaint, plaintiff seeks to add a constructive discharge claim under Title VII and additional claims alleging defendant violated her rights under the New York State and New York City Human Rights Laws. ECF No. 60-1. Defendant opposes plaintiff's motion. Def. Opp'n Mem., ECF No. 61. Plaintiff filed a reply and provided several documents, including copies of emails, concerning plaintiff's requests to work from home after March 2020. Reply, ECF No. 62, ECF No. 63-1 ("Exhibit A"); ECF No. 63-2 ("Exhibit B"); ECF No. 63-3 ("Exhibit C"); ECF No. 63-4 ("Exhibit D"); ECF No. 63-5 ("Exhibit E"); ECF No. 63-6 ("Exhibit F"). Defendant filed a sur-reply on July 28, 2021. Sur-Reply, ECF No. 67.

## STANDARD OF REVIEW

Where a party seeks to amend a pleading after a Court deadline, the request is examined under both Federal Rules of Civil Procedure 15 and 16. See Castro v. City of New York, No. 06-CV-2253(RER), 2010 WL 889865, at *1 (E.D.N.Y. Mar. 6, 2010) (discussing the interplay of Rules 16(b)(4) and 15(a)(2)).  Although Rule 16(b)(4) requires the Court to conduct a good cause analysis, Rule 15(a)(2) contains a more liberal standard, stating that leave to amend should be freely given when justice so requires. Id. (internal quotation marks omitted). "Where…a

---

[8] The Court held a conference on June 24, 2021 to address a dispute which arose during a deposition.
[9] Plaintiff's motion to amend failed to include a Memorandum of Law due to an oversight on the part of her counsel. ECF No. 68. The Memorandum of Law was later filed. ECF No. 69.

scheduling order governs amendments to the complaint, …'the lenient standard under Rule 15(a) must be balanced against the requirement under Rule 16(b) that the Court's scheduling order shall not be modified except upon a showing of good cause.'" Holmes v. Grubman, 568 F.3d 329, 334-35 (2d Cir. 2009) (internal quotation marks omitted) (quoting Grochowski v. Phoenix Constr., 318 F.3d 80, 86 (2003)). "Whether good cause exists turns on the 'diligence of the moving party.'" Id. (quoting Grochowski, 318 F.3d at 86). Here, both parties agree consideration under both Rules 15 and 16 is required, although they disagree regarding the proper analysis to employ. See Def. Opp'n Mem. 4; Reply 1-2.

When a party files its motion to amend after the deadline for amendment has passed, the amendment should only be allowed when the movant demonstrates that despite its diligence it could not have met the deadline. Christians of Cal. Inc. v. Clive Christian N.Y., LLP, No. 13 Civ. 0275(KBF)(JCF), 2014 WL 3605526, at *5 (S.D.N.Y. July 19, 2014)). A party has not been diligent when the proposed amendment is based on evidence it possessed prior to the deadline to amend its pleading. Id. (quoting Guity v. Uniondale Free Sch. Dist., No. 12-CV-1482, 2014 WL 795576, at *2 (E.D.N.Y. Feb. 27, 2014)). After the movant demonstrates good cause, the Court must consider whether to permit the amendment under Rule 15(a)(2). Id. (quoting Wheeler v. Citibank, No. 11 Civ. 4721, 2012 WL 1995148, at *5 (S.D.N.Y. June 1, 2012)).

Federal Rule of Civil Procedure 15(a)(2) provides, in pertinent part, that "a party may amend its pleading only with the opposing party's written consent or the court's leave." Leave to amend should be "freely given[n]...when justice so requires." FED. R. CIV. P. 15(a)(2); see also Grullon v. City of New Haven, 720 F.3d 133, 139 (2d Cir. 2013) (citing Foman v. Davis, 371 U.S. 178, 182 (1962)). However, leave to amend should be denied if the proposed amendment would be futile. Grullon, 720 F.3d at 140 (citing Foman, 371 U.S. at 182). Proposed amendments

are considered futile if they lack merit or would not withstand a motion to dismiss. Hunter v. Deutsche Lufthansa AG, 863 F. Supp. 2d 190, 202-03 (E.D.N.Y. 2012) (first quoting Health-Chem Corp. v. Baker, 915 F.2d 805, 810 (2d Cir. 1990); then quoting Lucente v. Int'l Bus. Machines Corp., 310 F.3d 243, 258 (2d Cir. 2002)). A motion to amend should be denied when the proposed amendment fails to state a claim upon which relief could be granted, see Medina v. Tremor Video, Inc., 640 Fed. Appx. 45, 47 (2d Cir. 2016) (summary order) (citing Cortec Indus., Inc. v. Sum Holding L.P., 949 F.2d 42, 50 (2d Cir. 1991). Absent futility, "a motion to amend should be denied only if the moving party has unduly delayed or acted in bad faith…[or] the opposing party will be unfairly prejudiced if leave is granted. Agerbrink v. Model Service LLC, 155 F. Supp. 3d 448, 452 (S.D.N.Y. 2016) (citing Foman, 371 U.S. at 182). "Mere delay…absent a showing of bad faith or undue prejudice, does not provide a basis for a district court to deny the right to amend." Fresh Del Monte Produce, Inc. v. Del Monte Foods, Inc., 304 F.R.D. 170, 174 (S.D.N.Y. 2014) (quoting State Teachers Ret. Bd. V. Fluor Corp., 654 F.3d 843, 856 (2d Cir. 1981)).

To determine whether a non-moving party would be prejudiced by the opposing party's amendment, courts consider "whether the assertion of the new claim[s] would: (i) require the opponent to expend significant additional resources to conduct discovery and prepare for trial; (ii) significantly delay the resolution of the dispute; or (iii) prevent the plaintiff from bringing a timely action in another jurisdiction." Block v. First Blood Assocs., 988 F.2d 344, 350 (2d Cir. 1993). However, merely alleging a party will be required to expend "'additional time, effort, and money [to litigate the new claims] do not themselves constitute undue prejudice.'" Fresh Del Monte Produce, Inc., 304 F.R.D. at 174 (quoting Christians of Cal. Inc., 2014 WL 3605526, at *5).

Whereas a motion to amend a complaint may be considered non-dispositive motion when granted, see Fielding v. Tollaksen, 510 F.3d 175, 178 (2d Cir. 2007); Bonilla v. City of New York, No. 20-CV-1704(RJD)(LB), 2020 WL 6637214, at * 2 (E.D.N.Y. Nov. 12, 2020) (citing Louis v. Metro Transit Auth., No. 12-CV-6333(ILG), 2014 WL 5311455, at *1 (E.D.N.Y. Oct. 16, 2014)), the motion is dispositive when denied, see Bonilla, 2020 WL 6637214, at * 2 (citing Sokol Holdings Inc. v. BMB Munai, Inc., No. 05-CV-3749(KMW), 2009 WL 3467756, at *3-4 (S.D.N.Y. Oct. 28, 2009)). Therefore, this Report is made in accordance with 28 U.S.C. § 636(b).

## DISCUSSION

### I.   Federal Rule of Civil Procedure 16(b)

In support of her motion, plaintiff argues that good cause exists for her amendment because "a significant amount of the conduct underlying Plaintiff's claims occurred after" the deadline for amending the pleadings. Reply 2. She further alleges that documents produced by defendant, some of which were only received in February 2021, support her new claims. Id. Defendant argues that plaintiff has not established good cause to permit amendment of the complaint and that permitting plaintiff to amend her complaint would delay adjudication of this case and would prejudice defendant by requiring additional discovery. Def. Opp'n Mem. 9-11. Further, defendant argues that plaintiff fails to explain why she waited so long after she resigned before she moved to amend. Sur-Reply 1. Defendant points out that no depositions had been taken at the time of her resignation and moving to amend months ago would have avoided the need to reopen discovery. Id.

A party may demonstrate good cause for delay by showing "that events bearing on its allegations occurred after the deadline to amend, or that it discovered information relevant to its

allegations of which it was unaware prior to the deadline." <u>Volunteer Fire Ass'n of Tappan, Inc.</u> <u>v. City. of Rockland</u>, No. 09-CV-4622 (CS), 2010 WL 4968247, at *4 (S.D.N.Y. Nov. 24, 2010) (citing <u>Woodworth v. Erie Ins. Co.</u>, No. 05-CV-6344(CJS), 2009 WL 1652258, at *3 (W.D.N.Y. June 12, 2009)). When a proposed amendment alleges defendant retaliated against plaintiff after the deadline for amending the pleadings has passed, this will constitute the good cause necessary to permit an amendment under Rule 16. <u>Greco v. County of Nassau</u>, No. 07-CV-2032(JFB)(WDW), 2008 WL 2725441, at *1 (E.D.N.Y. July 11, 2008) ("[T]he court agrees that retaliatory behavior occurring after a complaint has been filed, and after the deadline for moving to amend, could certainly constitute good cause for the late filing of a motion to amend….").

Here, the additional claims asserted in plaintiff's proposed TAC are based upon factual allegations which post-date the filing of the SAC, the parties' Rule 26(f) Report, the Court's order that plaintiff file her amended complaint by April 30, 2020, and the setting of the initial discovery schedule.[10] <u>See</u> TAC, ¶¶ 70-163 (discussing events which occurred after April 2020). The more recent nature of the allegations of retaliatory behavior in the proposed TAC supports a finding of good cause for its filing. <u>See</u> <u>Volunteer Fire Ass'n of Tappan, Inc.</u>, 2010 WL 4968247, at *4 (citing <u>Woodworth</u>, 2009 WL 1652258, at *3); <u>Greco</u>, 2008 WL 2725441, at *1. Plaintiff could not have alleged claims by the April 30, 2020 deadline based upon events which occurred after that date. Indeed, she did not resign her position – which she asserts was the result of a constructive discharge – until February 2021. <u>See</u> TAC, ¶ 162. Many of the factual allegations raised in the proposed TAC took place after initial discovery deadlines had been set, as they

---

[10] The parties' filings establish their agreement that, absent good cause, any amended pleading would be filed on or before April 30, 2020. Def. Opp'n Mem. 1-2, 4-5; Reply 1-2. On April 7, 2020, the Court ordered plaintiff to file her amended complaint by April 30, 2020. <u>See</u> Electronic Order dated April 7, 2020. A Rule 26(f) Report which stated that a deadline to join new parties or amend the pleadings was "not applicable" was filed on May 6, 2020. <u>See</u> ECF 43-1.

pertain to conduct occurring during the COVID-19 pandemic (which began in earnest in March 2020). Plaintiff notes that factual allegations supporting the constructive discharge claim "were culled from documents and information produced by Defendant in this action," and plaintiff's counsel submitted a number of documents produced during discovery to support the additional claims. Reply 2; Armstrong Decl., Ex. A-F, ECF No. 63.

Nonetheless, in conducting its good cause analysis, the Court may also consider a party's diligence and whether the filing of an amendment at this juncture will prejudice the defendant. Joinnides v. Floral-Park Bellerose Union Sch. Dist., No. 12-CV-5682(JS)(AKT), 2015 WL 1476422, at *9, *14 (E.D.N.Y. Mar. 31, 2015) (quoting Kassner v. 2nd Ave. Delicatessen Inc., 496 F.3d 229, 244 (2d Cir. 2007)). Here, plaintiff fails to provide a satisfactory explanation regarding why she waited until July 2021, after the completion of discovery, to seek leave to further amend her complaint.[11] Plaintiff acknowledges that she resigned in February 2021 and received "the last document responsive to her discovery demands…around February 2021," See Reply 2. These facts undermine plaintiff's position, as defendant is correct that the proposed amendment will necessitate additional discovery.

The Court must evaluate the degree of prejudice to be suffered by defendant while also considering the case's current posture, and the principle that disputes should be resolved in an "efficient and economical" manner. See M.G. v. Cuomo, No. 19-CV-639(CS)(LMS), 2020 WL 5038525, at *4 (S.D.N.Y Aug. 26, 2020) (citing GEM Global Yield Fund Ltd. v. SurgiLight, Inc., No. 04-CV-4451(KMK), 2006 WL 2389345, at *11 (S.D.N.Y. Aug. 17, 2006)). The Court is also mindful that, absent undue prejudice and a demonstration of bad faith, "mere delay" is not a sufficient reason to deny a party the right to amend its pleading. See Roll on Express, Inc. v.

---

[11] Although plaintiff claims discovery has not yet been completed, see Reply 2, discovery closed after the final 30(b)(6) depositions were conducted. See Electronic Order dated May 11, 2021.

Travelers Indem. Co. of Conn., No. 09-CV-213(RLM), 2009 WL 1940731, at *3 (E.D.N.Y. July 2, 2009) (quoting Aries Ventures Ltd. v. Axa Fin. S.A., 696 F. Supp. 965, 969 (S.D.N.Y. 1988).

Here, although the parties had recently completed discovery when plaintiff sought leave to amend her complaint, dispositive motion practice has not begun, the parties are not "on the eve of trial," and plaintiff's amendment would not likely cause a significant delay as plaintiff does not seek additional discovery to support her claims. Pl.'s Mem. of Law 3, ECF No. 69; Care Env't Corp. v. M2 Techs. Inc., No. CV 05 1600 (CPS), 2006 WL 2265036, at *6 (E.D.N.Y. Aug. 8, 2006). Although defendant's need to undertake additional discovery, including requiring plaintiff to provide medical releases and conduct a second deposition are certainly noteworthy, the need to conduct additional discovery is not by itself the type of prejudice which requires the Court to deny a motion to amend. See Roll on Express, Inc. v. Travelers Indem. Co. of Conn., No. 09-CV-213(RLM), 2009 WL 1940731, at *4 (E.D.N.Y. July 2, 2009) (citing Gursky v. Northwestern Mut. Life. Ins. Co., 139 F.R.D. 279, 283 (E.D.N.Y. 1991)). Additionally, defendants were placed on notice during a May 18, 2021 conference that plaintiff might seek to amend her complaint to add a constructive discharge claim; thus, defendants were not "unfairly surprised" by plaintiff's motion for leave to amend her Complaint. Pl.'s Reply Mem. at 6; Reza v. Khatun, No. 09 CV 0233 (MKB), 2013 WL 3190335, at *2 (E.D.N.Y. June 21, 2013) (concluding that defendant was not "unfairly surprised" by plaintiff's motion to amend because defendant was made aware during a conference that plaintiff intended to assert additional claims, even though plaintiff did not file the amended complaint until nine months later).

Plaintiff has demonstrated good cause for seeking leave to amend her complaint. However, before granting leave to amend, the Court must still consider the requirements of Rule

15(a) and whether the proposed amendment will be futile. See Joinnides, 2015 WL 1476422, at

*15 (citing Kassner, 496 F.3d at 244).

## II.     Futility of Proposed Claims

As previously discussed, a motion to amend should be denied where the amendment would

be futile. Grullon, 720 F.3d at 140 (citing Foman, 371 U.S. at 182). An amendment is futile when

it "could not withstand a motion to dismiss pursuant to FED. R. CIV. P. 12(b)(6)." Lucente v. Int'l

Bus. Machines Corp., 310 F.3d 243, 258 (2d Cir. 2002). Therefore, the Court reviews plaintiff's

proposed new claims to determine their viability.

### A.  Constructive Discharge

### 1. Exhaustion of Administrative Remedies

Prior to bringing a Title VII action in federal court, a plaintiff must file a charge of

discrimination with the EEOC within 180 or 300 days of the alleged discriminatory act, obtain a

right-to-sue letter from the agency, and commence a civil suit against the offending employer

within 90 days of obtaining the right-to-sue letter. 42 U.S.C. § 2000e-5(e), (f)(1); Fort Bend Cty.,

Texas v. Davis, 139 S. Ct. 1843, 1847 (2019). A plaintiff must exhaust these administrative

remedies as a precondition to bringing a Title VII claim in federal court, thereby giving the

EEOC the opportunity to "investigate, mediate, and take remedial action" on the claim.

Hardaway v. Hartford Pub. Works Dep't, 879 F.3d 486, 489-90 (2d Cir. 2018); Stewart v. United

States Immigration & Naturalization Service, 762 F.2d 193, 198 (2d Cir.1985). See Fort Bend

Cty., Texas, 139 S. Ct. at 1851 (stating that "Title VII's charge-filing requirement" is a

"processing rule, albeit a mandatory one," but not a "jurisdictional prescription").  A Title VII

claimant has not exhausted their administrative remedies if they fail to file a charge according to

the procedure and time limits prescribed by 42 U.S.C. 2000e. Nat'l R.R. Passenger Corp. v.

Morgan, 536 U.S. 101, 109 (2002); see also Hewitt v. New York City Dep't of Health & Mental Hygiene, 535 Fed. App'x 44, 45 (2d Cir. 2013) (summary order) (concluding that plaintiff had failed to "administratively exhaust her Title VII retaliation claim" because she did not include that claim in her charge to the EEOC).

In Butts v. City of New York Dep't of Hous. Pres. & Dev., the Second Circuit held that "a district court only has jurisdiction to hear Title VII claims that either are included in an EEOC charge or are based on conduct subsequent to the EEOC charge which is "reasonably related" to that alleged in the EEOC charge." 990 F.2d 1397, 1401 (2d Cir. 1993) (overruled on different grounds). Claims are 'reasonably related' if they fall either within the scope of the EEOC investigation based on the original charge, or allege retaliation based on an employee's filing with the EEOC. Id. at 1402-03; see also Melton v. Poughkeepsie City Sch. Dist., No. 16 CV 9701(VB), 2017 WL 6502242, at *5 (S.D.N.Y. Dec. 18, 2017) (concluding that claims not filed with the EEOC were reasonably related to claims that were filed, because the additional claims related to "similar examples of work reassignments on the basis of race" and thus would be covered by an EEOC investigation into the first claim).

Here, although plaintiff filed a complaint with the EEOC and received a right to sue letter regarding the claims alleged in her prior pleadings, SAC ¶ 59, she did not file a complaint and receive a right to sue letter from the EEOC for the additional Title VII claim raised in her Proposed Third Amended Complaint. Therefore, her claim would be time barred unless it is found to be reasonably related to her prior EEOC complaint.

Plaintiff alleges that her prior EEOC complaints and the instant action have resulted in retaliation so severe "that Defendant created intolerable working conditions, forcing her to retire from NYCT earlier than intended and on negative terms after a career of more than 35 years."

TAC ¶ 1. In her Proposed TAC, plaintiff alleges that she was constructively discharged because her supervisors at NYCTA took actions that endangered plaintiff's health during the COVID-19 pandemic, despite knowing plaintiff was high-risk for COVID-19 infection due to her race and gender. Id. ¶¶ 57, 83. Specifically, plaintiff alleges that she was forced to retire out of concern for her health because defendant did not enforce mask usage and social distancing, did not provide her the necessary technology to work from home, and ignored her request to work from home until the COVID-19 pandemic passed or abated. Id. ¶¶ 61, 75, 77, 79-83. Defendant contends that the new claims asserted in the proposed TAC must fail because they are not reasonably related to the discrimination and retaliation claims which formed the basis of plaintiff's prior pleadings and EEOC complaints. The Court disagrees.

The Second Circuit recognizes three circumstances in which a charge, although not brought before the EEOC, is sufficiently related to a previously exhausted EEOC claim to permit inclusion in a federal civil rights lawsuit. Terry v. Ashcroft, 336 F.3d 128, 151 (2d Cir. 2003). These situations include: "1) where the conduct complained of would fall within the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination; 2) where the complaint is one alleging retaliation by an employer against an employee for filing an EEOC charge; and 3) where the complaint alleges further incidents of discrimination carried out in precisely the same manner alleged in the EEOC charge." Id. (internal quotation marks omitted) (quoting Butts, 990 F. 2d at 1402-03). In Terry, the Circuit stated that where an employee alleges that they were constructively discharged because of retaliatory conduct, this will satisfy at least the second exception. Id. The Court stated that a different outcome "could have the perverse result of promoting employer retaliation in order to

impose further costs on plaintiffs and delay the filing of civil actions relating to the underlying acts of discrimination." Id. (quoting Butts, 990 F. 2d at 1402)

In Duplan v. City of New York, the Circuit extended the reasoning of Terry, holding that:

> Retaliation claims arising during or after an EEOC investigation are deemed exhausted when a plaintiff seeks to join them to a timely filed lawsuit on his original, exhausted claims, because it would be burdensome and wasteful to require a plaintiff to file a new EEOC charge instead of simply permitting him to assert that related claim in ongoing proceedings to adjudicate the underlying charge.

888 F.3d 612, 624 (2d Cir. 2018). The Circuit stated that it would be error to ignore the fact that "the efficiency of resolving all of the plaintiff's related claims in the single, already-pending lawsuit justified a departure from rigid adherence to the statutory exhaustion requirement." Id. at 623.

Here, the Court understands plaintiff to allege that the actions taken against her, which ultimately resulted in what she alleges was her constructive discharge, were taken in retaliation for her filing an EEOC complaint and the instant lawsuit. The new allegations contained in the proposed TAC, describing defendant's conduct during the COVID-19 pandemic, did not occur in isolation but rather are the consequences of plaintiff's prior EEOC charges and legal action. As noted previously, plaintiff's proposed TAC states that: "As a result of this legal action, Plaintiff has been retaliated against so severely that Defendant created intolerable working conditions, forcing her to retire…." TAC ¶ 1. Plaintiff claims defendant's actions put her health and safety at risk. See id. ¶¶ 55-163. Plaintiff states that during the new events alleged, her supervisor asked her if she was "sorry for filing a federal case," id. ¶ 95, and copied defendant's counsel in this matter on an email, id. ¶ 120. These facts support plaintiff's alleged constructive discharge claim, that defendant acted in retaliation for her previously exhausted complaints. Further, the 300-day period within which plaintiff would be required to file a claim for constructive discharge with the

EEOC does not expire until November 28, 2021.[12] It would be a waste of time and resources to require plaintiff to file a new EEOC complaint when her constructive discharge claim is so closely related to her previously exhausted claims pending before the Court. See Duplan, 888 F.3d at 623.

### 2. Plaintiff Adequately States a Claim for Constructive Discharge

A complaint must contain "'sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" Bonaffini v. Cty Univ. of N.Y., No. 20-CV-5518(BMC), 2021 WL 2206736, at * 2 (E.D.N.Y. June 1, 2021) (internal quotation marks omitted) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). A Title VII constructive discharge claim requires a showing that "an employer, rather than acting directly, 'deliberately makes an employee's working conditions so intolerable that the employee is forced into an involuntary resignation.'" Ingrassia v. Health and Hosp. Corp., 130 F. Supp. 3d 709, 724 (E.D.N.Y. 2015) (quoting Pena v. Brattleboro Retreat, 702 F.2d 322, 325 (2d Cir. 1983)). An employee must show that "he was discriminated against by his employer to the point where a reasonable person in his position would have felt compelled to resign…[and that] he actually resigned." Richard v. N.Y.C. Dep't of Educ., No. 16-CV-957(MKB), 2017 WL 1232498, at *13 (E.D.N.Y. Mar. 31, 2017) (internal quotation marks omitted) (quoting Green v. Brennan, 136 S.Ct. 1769, 1777 (2016)).

An employee plaintiff is not required to prove that her employer intended to cause her resignation, but must show that the defendant's actions were deliberate. See Murdaugh v. City of New York, No. 10-Civ-7218(HB), 2011 WL 798844, at *5 (S.D.N.Y. Mar. 8, 2011) (quoting Petrosino v. Bell Atlantic, 385 F.3d 210, 229 (2d. Cir. 2004)). "When alleging constructive discharge, plaintiffs 'face a demanding standard.'" United States v. N. Metro. Found. for

---

[12] November 28, 2021 is 300 days after February 1, 2021, the date plaintiff resigned due to what she alleges was a constructive discharge.

Healthcare, Inc., No. 13-CV-4933(MKB), 2019 WL 1597296, at *13 (E.D.N.Y. Apr. 14, 2019)

(quoting Miller v. Praxair, Inc., 408 F. App'x 408, 410 (2d Cir. 2010) (summary order)). Simply

alleging that working conditions were intolerable is insufficient to adequately allege a claim for

constructive discharge. Cecil v. U.S. Postal Service, No. 03 Civ. 8404(JSR), 2004 WL 1886202,

at *2 (S.D.N.Y. Aug. 24, 2004). Rather, "[w]orking conditions are intolerable when, viewed as a

whole, they are so difficult or unpleasant that a reasonable person in the employee's shoes would

have felt compelled to resign." Murdaugh, 2011 WL 798844, at *5 (quoting Terry, 336 F.3d at

152).

Here, plaintiff alleges she was "forced to retire" because of the "circumstances at the CIO

Shop … as well as the ongoing harassment, COVID-19 Pandemic, her health and well-being,

and being summarily denied a reasonable accommodation." TAC ¶ 161. Plaintiff alleges that the

work environment was hostile and that, as a result, her doctor diagnosed her with anxiety and

panic attacks. Id. ¶ 160. Plaintiff's proposed TAC alleges that her supervisors acted deliberately

causing a hostile environment, by among other things: requiring her to come to work at the CIO

shop at the beginning of the COVID-19 pandemic even though other workers were permitted to

work from home, id. ¶¶ 57-59; assigning plaintiff work which defendant knew plaintiff could not

complete remotely, id. ¶¶ 60-68; requiring plaintiff to return to in person work in August 2020

even though plaintiff feared for her health and safety, failing to enforce COVID-19 safety

protocols, and failing to address plaintiff's requests for permission to work remotely, id. ¶¶ 71-

93; requiring plaintiff to perform a new assignment at the CIO shop even though another

employee was already assigned the task and affording plaintiff no guidance despite her requests,

id. ¶¶ 101-09; revoking plaintiff's telework privileges because she was unable to access

programs on her computer even though other employees were permitted to telecommute, id. ¶¶

114-16; rejecting plaintiff's proposed teleworking plan after she had begun telecommuting and copying defendant's counsel on email correspondence, id. ¶¶ 117-20; filing OATH disciplinary charges against plaintiff accusing her of misconduct, including being "derelict" in her performance even though her requests for help were ignored, id. ¶ 125; approving plaintiff's telework plan and then still requiring her to be physically present at the CIO shop, id. ¶¶ 128-29; labeling plaintiff "AWOL" and requiring her to contact Labor Relations when plaintiff's treatment by her supervisors caused her to become sick and take leave, id. ¶¶ 140-42; issuing amended OATH charges while plaintiff was out sick which accused her of not completing work in compliance with her telework plan and failing to contact Labor Relations, id. ¶¶ 148-51; requiring plaintiff to report to Labor Relations to explain her AWOLs when she attempted to return to work, id. ¶ 155; and changing the lock on plaintiff's office door, effectively barring her from her workstation, id. ¶ 156. Plaintiff alleges that defendant's actions caused her to suffer "extreme emotional pain … sleeplessness, and anxiety" along with "migraine headaches and chest pains" for which she required medical treatment. Id. ¶ 159.

Although the standard for alleging a constructive discharge claim is very rigorous, see Pryor v. Jaffe & Asher, LLP, 992 F. Supp. 2d 252, 262 (S.D.N.Y 2014) (citing Miller, 408 Fed. Appx. at 410), plaintiff's TAC states a claim for constructive discharge. A constructive discharge claim may be based on the cumulative effect of multiple adverse workplace conditions. Madray v. Long Island University, 789 F. Supp. 2d 403, 410-11 (E.D.N.Y. 2011) (quoting Chertkova v. Conn. Gen. Life. Ins. Co., 92 F.3d 81, 90 (2d Cir. 1996)).

In Murphy v. Suffolk Cnty. Cmty. Coll., plaintiff alleged that he was denied a promotion, leave and training, forced to select his vacation time a full year in advance, reprimanded for calling in sick, and that younger employees were not treated the same way. No. 10-CV-

251(LDW)(AKT), 2011 WL 5976082, at *6 (E.D.N.Y. Nov. 29, 2011). As a result, plaintiff

decided to retire rather than risk termination. Id. The Murphy Court found that, at the pleading

stage, the allegations in the complaint were sufficient to sustain plaintiff's claim of constructive

discharge. Id. In Kassman v. KPMG LLP, plaintiff alleged, among other things, that her

complaints about a co-worker were ignored, that she was repeatedly disciplined and "encouraged

to meet with a behavior coach," that she was removed from the promotion track, and that she lost

her office space. 925 F. Supp. 2d 453, 475-76 (S.D.N.Y 2013). The Court found that her

allegations were sufficient to show that she was made to "feel that she was 'not wanted,'" and

therefore sufficient to state a claim for constructive discharge. Id. (citing Timothy v. Our Lady of

Mercy Med. Ctr., 03 Civ. 3556(RCC), 2004 WL 503760, at *7 (S.D.N.Y. Mar. 12, 2004)). In

Batista v. DeGennaro, plaintiff alleged that she was discriminated against because she was

Hispanic. No. 13 Civ. 1099(DAB), 2014 WL 1046735, at *7 (S.D.N.Y. Mar. 10, 2014). Plaintiff

claimed that she received unfounded disciplinary write-ups, was made fun of because of her

accent, and was subjected to special scrutiny, including receiving negative evaluations. Id. She

ultimately resigned. The Batista Court found that, looking at plaintiff's allegation's cumulatively,

she had plausibly alleged a claim for constructive discharge. Id.

Here, plaintiff has sufficiently stated a constructive discharge claim. See Murphy, 2011

WL 5976082, at *6 (citing Coffey v. Cushman & Wakefield, Inc., No. 01 Civ. 9447, 2002 WL

1610913, at *5 (S.D.N.Y. July 22, 2002)) (stating that at the pleading stage the Court could not

conclude that plaintiff would not be entitled to relief). Plaintiff complained about her treatment

and that of other African American employees, including that defendant repeatedly failed to

promote her while defendant promoted white employees with less experience. TAC ¶¶ 29-31.

Plaintiff filed several EEOC complaints and the instant federal lawsuit. Id. ¶ 34. Subsequently,

she alleges defendant retaliated against her as described above, including denying her request to telecommute during the COVID-19 pandemic, id. ¶¶ 58, 119, filing disciplinary charges against her, id. ¶¶ 122, 148, referring her to Labor Relations for being "AWOL," id. ¶¶ 145, 155, and changing the lock on her office, id. ¶¶ 156-57. Plaintiff's allegations make it at least plausible that plaintiff was intentionally made to feel that "she was 'not wanted as an employee.'" Kassman, 925 F. Supp. 2d at 476 (quoting Terry, 336 F.3d at 152). Viewing the allegations in a light most favorable to plaintiff, it is plausible that "a reasonable person in her position would have felt that they had no other alternative than to resign…." Madray, 789 F. Supp. 2d at 403.

Accordingly, the Court should grant plaintiff leave to amend her complaint to add a claim for constructive discharge. In addition, because "[c]laims brought under New York State's Human Rights Law are analytically identical to claims brought under Title VII of the Civil Rights Act of 1964," see Pryor, 992 F. Supp. 2d at 256 (quoting Torres v. Pisano, 116 F.3d 625, 629 n.1 (2d Cir. 1997)), plaintiff's motion to amend should be granted to the extent that she seeks to assert a claim for constructive discharge under state law. Plaintiff's motion to amend should also be granted to the extent that she seeks to assert a claim under the NYCHRL because the standard for constructive discharge under city law is identical to, if not even more protective, than under Title VII. See id. at 259-60; E.E.O.C. v. Bloomberg L.P., 29 F. Supp. 3d 334, 338-39 (S.D.N.Y. 2014).

### B. Failure to Accommodate

Plaintiff also seeks to add claims that defendant failed to provide her a reasonable accommodation under New York State Human Rights Law and New York City Human Rights law. TAC ¶¶ 183-86. Specifically, plaintiff argues that defendant failed to accommodate her repeated requests to telecommute during the COVID-19 pandemic, failed to provide her with the

necessary equipment to work remotely, and required her to report to the office and put her health and safety at risk. Id. ¶¶ 61, 75, 77, 79-83. Plaintiff submitted a medical notice to her supervisor that she was at high risk for COVID-19 and requested defendant's permission to work from home; defendant failed to respond. Id. ¶¶ 90-91.

Defendant argues that plaintiff's 'failure to accommodate' claim should not be allowed because plaintiff has not identified a disability that is covered by anti-discrimination laws. Def. Mem. In Opp'n. at 13-14. Plaintiff argues that she has adequately pled a failure to accommodate claim, as defined by the statute, "by alleging that her age and health subjected her to limitation of major life activities because of the risk of contracting COVID-19, as well as an increased risk of severe infection." Pl.'s Reply Mem. at 8.

Disability discrimination claims brought under New York State law are "governed by the same legal standards as federal ADA claims." Rodal v. Anesthesia Grp. of Onondaga, P.C., 369 F.3d 113, 117 (2d Cir. 2004). "Discrimination in violation of the ADA includes, *inter alia,* 'not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability.'" McBride v. BIC Consumer Prod. Mfg. Co., 583 F.3d 92, 96 (2d Cir. 2009) (quoting 42 U.S.C. § 12112(b)(5)(A)). A plaintiff may establish a prima facie case of failure to accommodate by showing that: "(1) plaintiff is a person with a disability under the meaning of the ADA; (2) an employer covered by the statute had notice of his disability; (3) with reasonable accommodation, plaintiff could perform the essential functions of the job at issue; and (4) the employer has refused to make such accommodations." Graves v. Finch Pruyn & Co., Inc., 457 F.3d 181, 184 (2d Cir. 2006) (internal citations omitted). The ADA defines disability as "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual." Bragdon v. Abbott, 524 U.S. 624, 630 (1998) (quoting

42 U.S.C § 12102(2)). New York City Human Rights Law defines 'disability' as, *inter alia*, "(a) An impairment of any system of the body; including, but not limited to, the neurological system; the musculoskeletal system; the special sense organs and respiratory organs, including, but not limited to, speech organs; the cardiovascular system; the reproductive system; the digestive and genito-urinary systems; the hemic and lymphatic systems; the immunological systems; the skin; and the endocrine system." N.Y.C. Admin. Code § 8-102.

Despite being in a demographic recognized as high risk for COVID-19 by the Centers for Disease Control and Prevention ("CDC"), plaintiff has not sufficiently pleaded that her race and age, or the illness she experienced in the winter of 2021,[13] constitute a disability under City or State Law.[14] See Missick v. City of New York, 707 F. Supp. 2d 336, 352 (E.D.N.Y. 2010) (concluding that plaintiff failed to establish a prima facie ADA claim because plaintiff's "cardiomyopathy, congenital heart failure, and hypertension" did not "qualify her as disabled for ADA purposes"). Although COVID-19 itself is a "serious respiratory virus," the issue of whether the fear of COVID will qualify as a disability requiring a reasonable accommodation is far from settled. See Velez v. Girraphic LLC, No. 20 Civ. 5644(JPC), 2021 WL 1873233, at *5 (S.D.N.Y. May 10, 2021). However, plaintiff fails to supply authority supporting her assertion that her age and race – while risk factors for infection – qualify as a disability.[15] Plaintiff's allegations

---

[13] The proposed TAC does not name plaintiff's illness in the winter of 2021, stating only that defendant's "outrageous treatment of Plaintiff caused her to become so ill that she was unable to continue working." TAC ¶ 140.

[14] The CDC has recognized that "older adults are more likely to get severely ill from COVID-19," and "long standing systemic health and social inequities have put various groups of people at increased risk of getting sick and dying from COVID-19, including many racial and ethnic minority groups." Centers for Disease Control and Prevention, *People with Certain Medical Conditions*, CDC (May 13, 2021), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus%2F2019-ncov%2Fneed-extra-precautions%2Fgroups-at-higher-risk.html

[15] Although this is undoubtedly an evolving discussion, "advanced age alone is not considered an impairment under the ADA." Frank Griffin, COVID-19 and the Americans with Disabilities Act: Balancing Fear, Safety, and Risk as America Goes Back to Work, 51 SETON HALL L. REV. 383, 408 (2020).

regarding "her age, race and health," TAC ¶ 73, are insufficient to state a disability discrimination claim. There would be far reaching consequences for society if age and race were themselves considered disabilities, especially as the COVID-19 pandemic persists. See Frank Griffin, COVID-19 and Public Accommodations Under the Americans with Disabilities Act: Getting Americans Safely Back to Restaurants, Theaters, Gyms, and "Normal," 65 St. Louis U. L.J. 251, 274 (2021) (calling the claim that age is a disability a "controversial argument").

Moreover, this claim was not a subject explored by the parties during discovery. Plaintiff could have raised this failure to accommodate claim while still employed by defendant but did not. Instead, plaintiff raises this COVID-19 based failure to accommodate claim for the first time seventeen months after the onset of the pandemic and five months after her resignation. Unlike plaintiff's constructive discharge claim, discussed at length above, plaintiff's failure to accommodate claims are new, separate and distinct from plaintiff's prior allegations of discrimination. Indeed, these new allegations are an entirely different flavor.

As explained previously, when presented with a motion to amend, the Court may consider a party's diligence and whether the filing of an amendment at this juncture will prejudice the defendant. Joinnides, 2015 WL 1476422, at *9, *14 (quoting Kassner, 496 F.3d at 244). "Prejudice is one of 'the most important reasons for denying a motion to amend.'" Baez v. Delta Airlines, Inc., No. 12 Civ. 3672(KPF), 2013 WL 5272935, at *7 (S.D.N.Y. Sept. 18, 2013) (quoting Berman v. Parco, 986 F. Supp. 195, 217 (S.D.N.Y. 1997)). An amendment is properly denied where the inclusion of a new claim will substantially impact ongoing litigation and require a defendant to commit "'significant additional resources' to defend" the action. Id. (quoting AEP Energy Servs. Gas Holding Co. v. Bank of Am., N.A., 626 F.3d 699, 727 (2d Cir. 2010)).

Here, permitting plaintiff to interpose this failure to accommodate claim at this juncture will severely prejudice defendant. Defendant states that the claims will require additional depositions and the obtaining of new "HIPAA authorizations from Plaintiff's medical providers to obtain relevant documents and information." Def. Opp'n Mem. 7. The Court agrees that permitting the addition of these vague new claims, which lack a direct nexus to the claims previously alleged, would necessarily require substantial discovery and result in prejudice to defendant. Baez, 2013 WL 5272935, at *7 ("Given that Plaintiff seeks to add new claims dealing with topics not explored through discovery, Defendant has ample reason to conduct additional discovery.").

Accordingly, plaintiff's motion to amend should be denied to the extent that she seeks to add claims under the NYSHRL and NYCHRL for failure to provide a reasonable accommodation.

## CONCLUSION

I respectfully recommend that plaintiff's motion for leave to file a Third Amended Complaint should be granted in part and denied in part. The motion to amend should be granted to the extent plaintiff seeks to add a claim under Title VII and New York State law for constructive discharge. The motion to amend should be denied in all other respects. Should this report be adopted, plaintiff shall file a TAC that conforms with this opinion within ten days and defendant shall answer the TAC ten days after that.

**FILING OF OBJECTIONS TO REPORT AND RECOMMENDATION**

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen days from service of this Report to file written objections. See FED. R. CIV. P. 6. Such objections shall be filed with the Clerk of the Court. Any request for an extension of time to file objections must be made within the fourteen-day period. Failure to file a timely objection to this Report generally waives any further judicial review. Marcella v. Capital Dist. Physicians' Health Plan, Inc., 293 F.3d 42 (2d Cir. 2002); Small v. Sec'y of Health and Human Servs., 892 F.2d 15 (2d Cir. 1989); see Thomas v. Arn, 474 U.S. 140 (1985).

SO ORDERED.

_____
                                        /S/
LOIS BLOOM
United States Magistrate Judge

Dated: September 28, 2021
         Brooklyn, New York

28