UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------------ X

CHRISTINE N. KNIGHT,

Plaintiff,

v.

METROPOLITAN TRANSPORTATION AUTHORITY -NEW YORK CITY TRANSIT
Defendant.

------------------------------------------------------------------ X

Case No.: 19-CV-1428 (PKC) (LB)

# MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF

# CHRISTINE N. KNIGHT'S MOTION FOR RECONSIDERATION

**Christine N. Knight**
28 Pony Court
Smyrna, DE 19977
(917) 674-7300
4yomind@gmail.com

1

Pursuant to Rule 60(b)(1) and Rule 60(b)(6) of the Federal Rules of Civil Procedure and Local Rule 6.3, Plaintiff respectfully moves this Court to reconsider its decision granting summary judgment in favor of Defendant on Plaintiff's retaliation claims under the New York City Human Rights Law ("NYCHRL"). Plaintiff respectfully requests that the Court reconsider its summary judgment decision, as it failed to evaluate Plaintiff's NYCHRL retaliation claim under the proper legal standard and omitted any substantive analysis of this claim in its ruling[1]. Relief is warranted due to mistakes of law and fact in the Court's ruling, and the Court's misapplication of the NYCHRL's broad protections[2], improper dismissal of key evidence of retaliatory animus and pretext, failure to properly consider temporal proximity and cumulative retaliatory impact, as well as extraordinary circumstances where the Court overlooked key evidence demonstrating retaliatory animus, pretext, and escalating retaliation under NYCHRL's broad standard.

## I. The Court Failed To Address Plaintiff'S NYCHRL Retaliation Claim

In its summary judgment order (ECF 116), the Court analyzed Plaintiff's retaliation claims under Title VII and NYSHRL in Section E but failed to consider the NYCHRL retaliation claim separately, despite NYCHRL's distinct and more protective standard. NYCHRL does not require a material adversity standard, but rather a showing that Plaintiff was treated less well because of retaliation. See Mihalik v. Credit Agricole Cheuvreux N. Am., Inc., 715 F.3d 102, 109 (2d Cir. 2013). By failing to assess the NYCHRL retaliation claim under this broader standard, the Court's analysis was incomplete and warrants reconsideration.

## II. The Court Misapplied the Broad Standard of the NYCHRL

---

[1] A motion for reconsideration is appropriate where the court overlooked controlling law or facts that were presented in the prior proceedings and where such oversight might reasonably alter the outcome of the case. See Shrader v. CSX Transp., Inc., 70 F.3d 255, 257 (2d Cir. 1995). A court's failure to address a properly raised claim is a valid basis for reconsideration. See Analytical Surveys, Inc. v. Tonga Partners, L.P., 684 F.3d 36, 52 (2d Cir. 2012).

[2] Rule 60(b)(1) provides relief from judgment on the grounds of "mistake, inadvertence, surprise, or excusable neglect." Fed. R. Civ. P. 60(b)(1) and available for a district court to correct legal errors by the court," United Airlines, Inc. v. Brien, 588 F.3d 158, 175 (2d Cir. 2009)

2

Under Mihalik v. Credit Agricole Cheuvreux N. Am., Inc., 715 F.3d 102 (2d Cir. 2013), the NYCHRL mandates a more expansive standard than Title VII and the NYSHRL. Plaintiff need only show that she was treated "less well" due to retaliation. The Court, however, improperly applied the material adversity standard from federal law, dismissing claims on the basis that the actions were not "significant" enough. This is plain legal error. The Second Circuit has held that the NYCHRL must be construed liberally, and Plaintiff need only demonstrate differential treatment motivated by retaliatory intent. The ruling ignored this, resulting in the erroneous dismissal of Plaintiff's valid claims. The Court's evaluation of Plaintiff's claims solely under Title VII's "materially adverse" standard does not account for the broader protections afforded under NYCHRL, which recognizes that even minor adverse actions or procedural barriers can qualify as retaliation if they are reasonably likely to deter an employee from engaging in protected activity. Under NYCHRL, Plaintiff need only demonstrate that retaliation was a "motivating factor" in the adverse actions taken by Defendant, as opposed to Title VII's stricter requirement of "but-for" causation. *See Williams v. N.Y.C. Housing Auth.*, 872 N.Y.S.2d 27, 31-32 (1st Dep't 2009). *Williams v. N.Y.C. Dep't of Educ.*, 19 Misc. 3d 1101[A]. Under Title VII, it was argued that Defendant's actions were not "materially adverse",[3] and that labeling Plaintiff as "AWOL," while undeniably harmful to her reputation and morale, was merely a procedural classification that did not directly impact her title, pay (assuming the withholding was temporary, though Plaintiff has not been paid to date), or core job responsibilities. However, Plaintiff strongly disputes this argument, as the "AWOL" designation created a false narrative of

---

[3] Plaintiff argues that Defendant's actions were indeed "materially adverse" under Title VII, as they had a profound effect on her professional reputation, financial stability, and emotional well-being. The cumulative impact of these actions—being falsely labeled as AWOL, forced into unsafe working conditions, and subjected to financial deprivation—would dissuade a reasonable employee from engaging in protected activity, meeting the Title VII standard for retaliation. Moreover, the Defendant's ongoing refusal to pay Plaintiff her rightful earnings magnifies the lasting adverse impact of its actions.

3

misconduct, damaged her professional credibility, and was used as a pretext to justify further adverse action. By repeatedly labeling Plaintiff as AWOL despite being informed of her medical status, NYCT's actions could reasonably discourage her or others from filing complaints in the future due to the fear of unjust punishment. It was also claimed that withholding Plaintiff's pay was a temporary administrative delay, attempting to make the argument that it did not permanently alter her salary or benefits and therefore did not constitute a materially adverse action, but Plaintiff disputes this argument, as the withheld pay, totaling approximately $25,000, remains unpaid to this day, causing lasting financial harm. This delay has also adversely impacted Plaintiff's pension and Social Security benefits, which are calculated based on lifetime earnings. These long-term financial consequences contradict Defendant's characterization of the withholding as "temporary" and underscore the severe impact of its retaliatory conduct. Court may have argued that Defendant's actions were merely frustrating for Plaintiff, failing to meet Title VII's stricter standard, which requires clear, tangible setbacks in salary, position, or career impact to qualify as materially adverse. From this perspective, the Court framed its conduct as procedural or administrative rather than retaliatory, agreeing with claims that these actions might not be considered materially adverse enough to deter a "reasonable worker" from filing a complaint. However, plaintiff argues that by minimizing the cumulative impact of actions, the Court disregards the broader context of the harm inflicted on her, undermining the notion that would not deter a "reasonable worker" from filing a complaint.

**III. Failure to Properly Weigh Evidence of Retaliatory Animus and Pretext**

The Court failed to properly analyze multiple pieces of evidence demonstrating retaliatory animus and pretext. First, the Court dismissed Balkaran's comment, "If you had it to do over, would you still sue Transit?"[4]—a statement that directly links Plaintiff's lawsuit to the adverse

---

[4] Exhibit 61, dkt.109 (Knight's Dep. Tr. 216:11-21)

4

actions that followed. This explicit retaliatory remark should have been weighed as strong evidence of motive. Such a statement reveals an unguarded moment where Balkaran's underlying motives and intentions toward Plaintiff's protected activity were exposed, creating a significant issue of material fact as to whether Plaintiff's legal actions and complaints triggered the adverse actions she experienced. A jury could reasonably infer from Balkaran's inquiry that Defendant's adverse actions—including delays in approving Plaintiff's overtime pay, improperly marking her as AWOL, and escalating disciplinary measures—were influenced by retaliatory intent. This inference is further bolstered by the proximity of Plaintiff's protected activity to these adverse actions and Balkaran's demonstrated hostility toward Plaintiff's legal advocacy. Given these factors, Plaintiff has presented compelling evidence that Defendant's conduct was at least partly motivated by retaliatory intent, as evidenced by Balkaran's revealing inquiry. Under NYCHRL's broader retaliation standard, these circumstances strongly support the conclusion that Defendant's actions were reasonably likely to deter Plaintiff or others from engaging in further protected activity. Defendant's proffered reasons for revocation are inconsistent and contradictory: First, Defendant claimed Plaintiff was noncompliant with sick leave policies; then, it claimed she failed to submit proper telework plans. These shifting explanations undermine credibility and suggest pretext. The Court's dismissal of Balkaran's retaliatory comment is flawed. The fact that Balkaran made this statement before Plaintiff's December 2020 complaint does not erase its significance. Under NYCHRL, retaliatory animus does not need to originate from a single event; rather, it can be demonstrated through a pattern of behavior. See Williams v. N.Y.C. Hous. Auth., 61 A.D.3d 62, 79-80 (1st Dep't 2009) ("Evidence of a general retaliatory atmosphere can support an inference that a particular action was retaliatory."). The Court misapplies Zann Kwan v. Andalex Grp. LLC, 737 F.3d 834 (2d Cir. 2013) by requiring Plaintiff

to provide direct evidence of pretext. Under NYCHRL, the existence of material factual disputes regarding Defendant's shifting justifications and selective application of its policies precludes summary judgment.

Second, the Court improperly accepted Defendant's justifications without scrutinizing their shifting explanations, procedural inconsistencies, or disparate treatment of Plaintiff. Plaintiff's AWOL designation was allegedly due to failing to submit sick leave forms, yet evidence shows that her supervisor knew she was sick and refused to approve leave. The lock on her office door was changed only after she returned from sick leave, indicating exclusionary intent rather than a neutral security measure. Defendant claims that Plaintiff's telework revocation was due to her not having proper equipment, yet other employees without equipment were allowed to telework. Pretext need not be proven by direct evidence alone—circumstantial evidence, procedural irregularities, and inconsistent explanations are sufficient. Zann Kwan v. Andalex Grp., LLC, 737 F.3d 834, 846 (2d Cir. 2013). The Court failed to weigh these factors.

The Court erroneously concluded that Defendant revoked Plaintiff's telecommuting privileges due to noncompliance with NYCTA's policy, failing to recognize the retaliatory nature of Defendant's actions. Defendant knowingly provided Plaintiff with a work laptop that lacked the essential Talon and CMS applications required for her job, yet still demanded she submit weekly telecommuting plans. This created an impossible condition designed to manufacture noncompliance, serving as a pretext for retaliation. The Court overlooked the fact that Plaintiff repeatedly informed Defendant of these technical deficiencies and sought assistance, yet Defendant failed to provide effective IT support and instead placed the burden on Plaintiff to "fix it herself." Further, the Court wrongly accepted Defendant's assertion that Plaintiff was uniquely unable to work remotely, ignoring that other employees—such as Elvis James—were granted full

6

telework privileges without similar obstacles. Defendant's shifting justifications—first claiming Plaintiff failed to submit telework plans, then citing alleged noncompliance with sick leave policies—underscore inconsistencies that raise material issues of pretext.

Under NYCHRL's broad retaliation standard, the Court was required to assess whether Defendant's conduct was reasonably likely to deter Plaintiff from engaging in protected activity. The revocation of telecommuting privileges—despite Defendant's knowledge that Plaintiff lacked the necessary tools to comply—was not a neutral application of policy but a targeted action designed to isolate and intimidate Plaintiff.[5] These material disputes preclude summary judgment, and the Court should reconsider its ruling to allow Plaintiff's NYCHRL retaliation claim to proceed.

**IV. Defendant's Selective AWOL Classification as Evidence of Retaliatory Intent**

The Court should reconsider its ruling granting summary judgment on Plaintiff's NYCHRL retaliation claims because Defendant's selective enforcement of its AWOL policy raises a material dispute of fact that precludes summary judgment. Plaintiff was falsely marked AWOL despite notifying her supervisors that she was out sick from December 31, 2020, to January 27, 2021 (Plaintiff's Dep. Tr. 343:2-17, 358:19-23)[6]. Defendant's sudden insistence on formal documentation—a deviation from its longstanding practice—immediately following Plaintiff's protected activity suggests pretext and retaliatory motive.

Further, despite being explicitly notified by Plaintiff via text and by her daughter (Ex. 59, dkt.109) regarding plaintiff's medical leave and forwarded to management, Defendant falsely claimed that Plaintiff had no communication with NYCT during this period. This blatant

---

[5] Exh.54, dkt.109 Knight notifies manager that she in fact did not need duo mobile to do her work as falsely claimed.
[6] Plaintiff attempted to contact her manager. However, when she was unable to get in touch with her manager, she contacted her co-worker and asked to relay the message to the manager that Plaintiff will be out sick, which is standard practice. Ex. 61, dkt.109 (Knight's Dep. Tr. 141:4-15, 142:20-24)

7

misrepresentation not only contradicts the record but also reinforces an inference of retaliatory intent. Defendant's insistence on labeling Plaintiff as "AWOL" despite clear evidence of her sick leave demonstrates its deliberate attempt to fabricate a basis for adverse action against her, ultimately to punish and deter her from continuing to engage in protected activity.

Notably, Defendant's own Statement of Facts concedes that another employee, Mary Johnson, was not marked AWOL despite failing to notify her supervisor and only informing a co-worker (SF ¶¶ 159-162), whereas Plaintiff was singled out and penalized[7]. This disparate treatment supports an inference of retaliatory intent and such confirms Plaintiff's testimony that it was standard practice for employees in her department to simply notify their team when out sick without requiring formal documentation. There is no evidence that Defendant imposed this requirement on other employees, further supporting an inference of pretext. Defendant's shifting justifications—first alleging Plaintiff failed to notify management, then pivoting to an alleged failure to provide documentation—underscore inconsistencies that must be resolved by a jury. The fact that only Plaintiff—who had engaged in extensive protected activity—was suddenly held to a different standard and penalized, underscores a clear pattern of retaliation. Defendant's insistence on labeling Plaintiff as "AWOL" despite clear evidence of her sick leave demonstrates its retaliatory objective. Under NYCHRL's broader retaliation standard, an adverse action need only be reasonably likely to deter an employee from engaging in protected activity. Falsely marking an employee AWOL—resulting in lost pay and reputational harm, and unwarranted disciplinary scrutiny—easily meets this standard.

**V. The Court Improperly Dismissed Temporal Proximity Evidence**

The Court relied on the notion that a nine-month or several-month gap between protected activity and adverse actions defeats causation. This is contrary to Second Circuit precedent. In Zann

---

[7] On two separate occasions, September 2019 and January 2021, Knight was subjected to these different standards.

Kwan, the Court explicitly held that "even if some time has passed, a pattern of retaliatory conduct can still establish causation." In addition, the Court relied on Butts v. N.Y.C. Dep't of Hous. Pres. & Dev., No. 00-CV-6307 (KMK), 2007 WL 259937 (S.D.N.Y. Jan. 29, 2007), to conclude that a nine-month gap between the protected activity and the alleged retaliation was too long to infer causation. However, this application of law is flawed under the NYCHRL, which provides broader protections than federal law. Courts have emphasized that under NYCHRL, temporal gaps do not automatically negate a causal connection[8]. Courts must consider additional context, such as evidence of retaliatory intent, patterns of retaliatory conduct or evidence suggesting continuing retaliatory animus. **Harrington v. City of New York**, No. 10 Civ. 7106 (PKC), 2012 WL 3578163 (S.D.N.Y. Aug. 17, 2012) allowed a claim to proceed despite a significant time lapse, noting that under NYCHRL, even a lengthy gap does not necessarily sever causation if retaliatory motivation can be inferred from surrounding circumstances. A nine-month gap should not automatically bar a retaliation claim under NYCHRL. Courts should consider the employer's behavior over time, patterns of hostility, and additional evidence suggesting retaliatory intent. The reliance on *Butts* fails to align with the NYCHRL's remedial purpose and should not preclude an inference of causation. Plaintiff made 39 complaints spanning multiple years, with increasing retaliation each time, culminating in her constructive discharge. The escalating pattern of retaliation following each complaint establishes a strong inference of causation, even if individual actions were separated by months. The Court erred in ignoring this clear pattern. The Court also wrongly isolated each retaliatory act rather than considering their cumulative impact. False AWOL markings, revocation of telework privileges despite Plaintiff's COVID-19 risk, locking Plaintiff out of her office, refusal to investigate numerous discrimination complaints, and denial of promotions and overtime. When analyzing

---

[8] Williams v. New York City Housing Authority, 61 A.D.3d 62 (N.Y. App. Div. 2009)

9

Plaintiff's retaliation claims, the Court failed to weigh evidence of defendant's retaliatory intent. Andrews' statement, "**You've been here a long time. You might think about packing it in.**" directly supports an inference that NYCTA sought to push Plaintiff out in retaliation for her complaints. This coupled with Defendent's pattern of adverse actions, creates a triable issue of fact as to whether NYCTA deliberately made Plaintiff, work environment intolerable as a means of retaliation, a determination that must be left for a jury. However, Plaintiff need not show direct evidence of discriminatory or retaliatory conduct. It is well established, [d]irect evidence of [retaliation] is not necessary, because proof is seldom available with respect to an employer's mental processes. Instead, plaintiffs in discrimination suits often must rely on the cumulative weight of circumstantial evidence, since an employer who discriminates against its employee is unlikely to leave a well-marked trail, such as making a notation to that effect in the employee's personnel file. Carlton v. Mystic Transp., Inc., 202 F.3d 129, 134-35 at 13 (2d Cir. 2000). The retaliation against Plaintiff for making complaints of discrimination and retaliation alone is more than enough to meet Plaintiff's burden here. The many lurid actions leveled at Plaintiff (as described in detail above), makes it clear Defendant treated Plaintiff worse. In reviewing the evidence and the inferences that may reasonably be drawn, the court 'may not make credibility determinations or weigh the evidence ... Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge.' 'Where an issue as to a material fact cannot be resolved without observation of the demeanor of witnesses in order to evaluate their credibility, summary judgment is not appropriate.' In sum, summary judgment is proper only when, with all permissible inferences and credibility questions resolved in favor of the party against whom judgment is sought, 'there can

10

be but one reasonable conclusion as to the verdict,' i.e., 'it is quite clear what the truth is.' Kaytor v. Elec. Boat Corp., 609 F.3d 537, 545-46 (2d Cir. 2010).

**VII. Conclusion**

For the reasons set forth above, Plaintiff respectfully requests that this Court reconsider its summary judgment ruling and allow the NYCHRL retaliation claim to proceed to trial, as the Court did not fully address this claim in its prior decision, applied an incorrect legal standard, failed to weigh critical evidence, and did not take into account Second Circuit precedent on temporal proximity, pretext, and cumulative retaliatory impact. Given these substantial errors, reconsideration is warranted. WHEREFORE, Plaintiff respectfully requests that this Court reconsider its ruling and deny summary judgment on her NYCHRL retaliation claims, allowing a jury to decide these disputed material facts. If the Court is not inclined to immediately allow the claim to proceed, Plaintiff urges the Court to modify its ruling to properly analyze the NYCHRL retaliation claim under the appropriate legal standard and deny summary judgment on this claim. In the alternative, should the Court decline to proceed with a federal trial on this sole remaining claim, Plaintiff respectfully asks that the Court exercise its discretion under 28 U.S.C. § 1367(c) and dismiss the NYCHRL retaliation claim without prejudice, so that Plaintiff may refile the claim in New York State Supreme Court, where it can be fully adjudicated under the appropriate legal framework. Plaintiff further requests any other relief that the Court deems just and proper.

Dated: February 10, 2025

Respectfully submitted,

By: ___/s/ *Christine N. Knight*_____

**Christine N. Knight**
28 Pony Court
Smyrna, DE 19977
(917) 674-7300
4yomind@gmail.com